Commonwealth *v.* Simpson, Appellant.

Argued September 30, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*I. Herman Stern,* for appellant.

*James D. Crawford,* Assistant District Attorney, with him *Richard A. Sprague,* First Assistant District

Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, January 9, 1970:

The appellant, Wallace Simpson, was convicted by a jury in Philadelphia County of aggravated robbery, and murder in the first degree. On the latter conviction, the jury fixed the punishment at life imprisonment. Motions in arrest of judgment and for a new trial were subsequently denied, and on the murder conviction the court imposed sentence as the jury directed. On the robbery conviction, a prison sentence of 10 to 20 years was imposed; the sentences to run consecutively. These appeals followed.

The basic question and the only one requiring discussion is whether or not the evidence was sufficient, as a matter of law, to sustain the convictions. We conclude not.

The Commonwealth's evidence at trial was as follows:

Edwin Duncan and Hugh Fitzpatrick operated a used automobile sales lot in Darby, Pennsylvania, under a partnership arrangement. About 10 a.m. on May 28, 1964, the appellant, Simpson, visited the lot and indicated an interest in purchasing a 1958 Mercury automobile which was then on the lot. The asking price for this vehicle was $390, but after some discussion, Duncan reduced the price to $300. Simpson said he had $100 on his person.

John Brown, a friend of Duncan, then took Simpson out for a demonstration or test ride. This covered approximately four miles in all. During this ride, Brown drove to and stopped at the home of Simpson's sister in Sharon Hill at Simpson's request. There he asked for her opinion of the car. While returning to the sales lot, a knock developed in the automobile's motor.

About 11:30 a.m., Fitzpatrick left the sales lot with Simpson for a second test ride. Simpson was driving. Fitzpatrick never returned to the sales lot and was never seen alive again by his friends or associates. Efforts to locate him were fruitless. When Fitzpatrick left the lot with Simpson, Fitzpatrick had $84 in cash on his person.

About twelve noon of the same day, Simpson arrived alone at the home of a girl friend, Ida Brown, driving the 1958 Mercury. He told her, "It was his car." About two hours later, Simpson drove Miss Brown to the Holmesburg Prison to visit her brother. During the return trip, he agreed to drive her to a gas company's office, but en route the automobile broke down and was abandoned on a street in West Philadelphia. On June 19th, the police found the automobile at this location and towed it away.

On August 2, 1964, two months and six days after his disappearance, the skeletonized remains of the body of Fitzpatrick were found in a field in Philadelphia, about two blocks distant from the residence of Ida Brown, and in the approximate vicinity of the used automobile sales lot.

The skull and ribs were intact, but very little remained except the skeleton, traces of cartilage and leather-like skin covering the lower extremities. No evidence of fracture or trauma could be found, nor could the precise cause or manner of death be ascertained. The medical examiner who performed the autopsy stated that the death could have occurred at any time within a period of one week to several months preceding the discovery of the remains. He further stated that he could not rule out the possibility that death was due to natural causes.

The Commonwealth's position at trial was that Simpson committed a felony murder, i.e., a killing in the perpetration of a robbery. It did not contend that

the evidence justified a finding of nonfelony murder. Also, the court instructed the jury that the basic claim of the Commonwealth was that Simpson committed a killing in the perpetration of or in an attempt to commit a robbery. Additionally, the district attorney candidly admitted before this Court that if the commission of a robbery had not been established by the trial evidence, neither the convictions for robbery nor murder should stand. The reason for this is obvious: "The distinguishing criterion or hallmark of murder is legal malice, express or implied. Malice is an absolutely essential ingredient of murder." *Commonwealth v. Tyrrell,* 405 Pa. 210, 212, 174 A. 2d 852, 853 (1961). If a person kills another in the perpetration of a felony, such as robbery, then the commission of the felony imbues the killing with the required element of malice thereby making the killing murder. The malice of the initial offense attaches to whatever else the criminal may do in connection therewith. *Commonwealth v. Redline,* 391 Pa. 486, 137 A. 2d 472 (1958); *Commonwealth v. Guida,* 341 Pa. 305, 19 A. 2d 98 (1941). But where the commission of the felony itself has not been established, there is nothing to supply the required element of malice, unless other evidence establishes its existence.

It is true that circumstantial evidence, in itself, may be sufficient to establish the commission of a crime and the accused's connection therewith. *Commonwealth v. Finnie,* 415 Pa. 166, 202 A. 2d 85 (1964). It is equally true that in evaluating the sufficiency of the evidence after a guilty verdict, all of the evidence, be it direct or circumstantial, must be read in a light most favorable to the Commonwealth, and the Commonwealth must be given the benefit of all reasonable inferences arising therefrom. *Commonwealth v. Burns,* 409 Pa. 619, 187 A. 2d 552 (1963). But before a conviction will be sustained, "the facts and circumstances proved

must be of such a character as to establish guilt beyond a reasonable doubt." *Commonwealth v. Garrett*, 423 Pa. 8, 12, 222 A. 2d 902, 905 (1966). And, where a conviction is based entirely on circumstantial evidence, "the theme of guilt must flow from the facts and circumstances proved, and be consistent with them all." *Commonwealth v. Clinton*, 391 Pa. 212, 218, 137 A. 2d 463, 466 (1958). If the conviction is based wholly on inferences, suspicion and conjecture, it cannot stand. *Commonwealth v. Townsend*, 428 Pa. 281, 237 A. 2d 192 (1968); *Commonwealth v. Garrett*, supra; *Commonwealth v. Deyell*, 399 Pa. 563, 160 A. 2d 448 (1960); and, *Commonwealth v. Clinton*, supra.

It is our considered conclusion that the evidence in this case is not sufficient, as a matter of law, to establish beyond a reasonable doubt that Simpson committed a robbery as charged.

The crime of robbery consists of two important elements: (1) The felonious intent to take money or goods from the person, presence or control of another; and (2) the accomplishment of that end by violence or putting in fear. *Commonwealth v. Burdell*, 380 Pa. 43, 110 A. 2d 193 (1955); *Commonwealth v. Darcy*, 362 Pa. 259, 66 A. 2d 663 (1949), cert. denied, 338 U.S. 862, 70 S. Ct. 96 (1949); and, *Commonwealth v. Crow*, 303 Pa. 91, 154 A. 283 (1931). Both elements must be established by the Commonwealth.[1]

---

[1] The crime of robbery is not defined in the Pennsylvania Penal Code (Act of June 24, 1939, P. L. 872, §704, 18 P.S. §4704); however, the common law definition is imbedded in Pennsylvania jurisprudence. Common law robbery consists of "forcibly and feloniously taking from the person or presence of another money or goods of any value by means of violence or putting that other person in fear." *Commonwealth v. Darcy*, supra at 278, 66 A. 2d at 673. Aggravated robbery is committed if at the time of the offense the felon is armed with an offensive weapon or instrument or beats, strikes or ill-uses the victim, Act of June 24, 1939, P. L. 872, §705, 18 P.S. §4705.

Assuming that the evidence herein is sufficient to establish beyond a reasonable doubt that Simpson intended to take property from the person, presence or control of Fitzpatrick, it is certainly not sufficient to establish beyond a reasonable doubt that in the perpetration thereof, Simpson employed violence or placed Fitzpatrick in fear. Such a finding would be based on pure conjecture. Not one fact or any reasonable inference arising from the evidence supports such a conclusion.

In speaking of the sufficiency of the proof required to establish the corpus delicti in murder, we said in *Commonwealth v. Gardner,* 282 Pa. 458, 464, 128 A. 87, 90 (1925) : "It is not enough, however, to show a death, but death must be consistent with a criminal act before a conviction will be sustained." But, where the commission of robbery is charged, it is not enough to merely show a dead body to establish the existence of violence or placing in fear. Homicide concerns itself with a *criminal* death. Robbery involves a *violent* taking or a taking by threat of force. Any criminal act which causes the death of another is a homicide, but the crime of robbery has more constituent elements than homicide and it necessarily requires a particular manner or kind of taking. If a taking was caused by criminal means, the crime would not be robbery unless the manner of the taking was violent or threatening. And if a dead body is to be used as the only evidence to establish a taking by violence, it is not sufficient that the death be consistent with a *criminal* act. It must moreover be consistent with a violent act. In this respect, the evidence in this case fails.

---

While it was the contention of the Commonwealth in this case that Simpson was guilty of aggravated robbery, it would be sufficient to sustain the felony murder conviction if the evidence established beyond a reasonable doubt that the killing occurred in the commission of or in an attempt to commit a robbery as that crime is viewed at common law.

Since, therefore, the evidence is insufficient, as a matter of law, to establish one of the basic and necessary elements of robbery, the convictions cannot stand.

Judgments reversed.